IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LOG, L.L.C., | ) | CASE NO. 10-80378 |
| | ) | |
| Debtor. | ) | Chapter 11 |

## MEMORANDUM OPINION

This matter came before the Court on October 20, 2010, upon the Amended Emergency Motion to Show Cause Why Automatic Stay Has Not Been Violated and for Injunction and Sanctions (the "Motion") filed on November 16, 2010, by the above-referenced debtor (the "Debtor"). The Motion requests an ex parte order requiring The Fidelity Bank ("Fidelity") to show cause why the automatic stay provided by Section 362 of the Bankruptcy Code has not been violated and why Fidelity should not be held in contempt of court. Furthermore, the Motion requests injunctive relief and an award of damages. Gregory B. Crampton appeared on behalf of the Debtor, and Craig S. Haskell appeared on behalf of Fidelity.

## JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (G), which this Court has the jurisdiction to hear and determine.

## FACTS

On July 26, 2007, the Debtor executed a promissory note in favor of Fidelity in the original principal amount of $550,000.00 (the "Note"). The Note was secured by a Deed of Trust on certain real property (the "Property") owned solely by Marty and Susan McKenzie. Marty McKenzie is the sole member and manager of the Debtor. The McKenzies also each executed an unlimited Commercial Guaranty whereby they personally guaranteed the repayment of the Note to Fidelity (the "Guaranties"). The parties agree that the Deed of Trust does not secure the McKenzies' Guaranties.[1]

The Debtor defaulted on the Note. On March 3, 2010, the Debtor filed for Chapter 11 bankruptcy. On March 25, 2010, Fidelity filed a Motion for Relief from the Automatic Stay and in the Alternative for Adequate Protection (the "Stay Motion"). On April 30, 2010, the Debtor filed a response to the Stay Motion. On June 4, 2010, Fidelity withdrew the Stay Motion, believing that the automatic stay was inapplicable to the Property because the Property is owned solely by non-debtors and is not property of the estate. On August 2, 2010, Fidelity commenced foreclosure on the Property. Pursuant to the provisions of the Note and Deed of Trust, Fidelity caused a foreclosure sale to be conducted on October 14, 2010. On October 16, 2010, the Debtor filed the instant Motion, asking Fidelity to show cause why its foreclosure on the Property did not violate the automatic stay,

---

[1] The Deed of Trust states that "[t]he Indebtedness secured by this Deed of Trust is for present and future obligations and this Deed of Trust is given to secure all present and future obligations of Grantor to Beneficiary." Deed of Trust, page 2. The Deed of Trust defines "Grantor" as "Marty R McKenzie and Susan B. McKenzie, Title Holders, and LOG, LLC, Borrower, together." Id. The Deed of Trust is signed by Marty McKenzie, Susan McKenzie, and LOG, LLC. A colorable argument could be made that the Deed of Trust does, in fact, secure the Guaranties of the McKenzies. However, neither Fidelity nor the Debtor takes the position that the Guaranties are secured by the Deed of Trust. Nonetheless, for reasons explained below, the issue of whether the Guaranties are secured by the Property is irrelevant to the applicability of the automatic stay to the foreclosure on the Property.

and seeking an injunction and sanctions.

**DISCUSSION**

The automatic stay provisions of Section 362 protect the debtor, the property of the debtor, and property of the estate from a broad range of formal or informal actions that may be taken by creditors to collect on claims. Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986); Grady v. A.H. Robins Co. (In re A.H. Robins, Co.), 839 F.2d 198, 200 (4th Cir. 1988). The automatic stay can also be extended in "unusual circumstances" pursuant to Section 105. Willis v. Celotex Corp., 978 F.2d 146, 149-150 (4th Cir. 1992); A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986). In this case, the parties agree that the Property is not property of the estate or property of the Debtor, so it is not protected by Section 362(a)(3), (a)(4), or (a)(5), nor does the Debtor contend that the stay needs to be extended pursuant to Section 105.[2] Instead, the Debtor argues that the stay is directly applicable to Fidelity's foreclosure on the Property pursuant to Section 362(a)(1) or Section 362(a)(6). For the reasons discussed below, the Court finds this argument to be unpersuasive.

Section 362(a)(1) provides for a broad stay of "action[s] or proceeding[s] against the debtor that [were] or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before commencement of the case under this title." 11 U.S.C. § 362(a)(1). This provision has traditionally been interpreted to include only formal legal proceedings against the debtor, and not litigation that collaterally affects the debtor. Collier on Bankruptcy ¶ 362.03[3] (16th ed. 2010). See also Groner v. Miller (In re Miller), 262 B.R. 499,

---

[2]Had the Debtor raised an "unusual circumstances" argument seeking extension of the automatic stay under Section 105, the evidence on the record would be insufficient to warrant such an extension.

503-04 (B.A.P. 9th Cir. 2001); In re Carlson, 265 B.R. 346, 348 (Bankr. D.R.I. 2001).

Section 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). This broader provision stays informal post-petition actions of creditors, such as the cashing of checks or the continuation of automatic payroll deductions. See, e.g., In re Krivohlavek, 405 B.R. 312, 315-16 (B.A.P. 8th Cir. 2009); In re Hellums, 772 F.2d 379, 381 (7th Cir. 1985).

Generally, actions against third parties such as guarantors are not stayed by Section 362(a). Credit Alliance Corp v. Williams (In re Penn Hook Coal Co.), 851 F.2d 119, 121 (4th Cir. 1998); Otoe County National Bank v. W & P Trucking, Inc., 754 F.2d 881, 883 (10th Cir.1985). However, a court may nevertheless enjoin the action if it would substantially interfere with the debtor's reorganization. Id. at 121; see also In re Eagle-Picher Indus., 963 F.2d 855, 860 (6th Cir. 1992); In re Otero Mills, Inc., 25 B.R. 1018, 1021 (D.N.M. 1982). Furthermore, as noted above, actions against third parties may be stayed in "unusual circumstances" when the debtor is essentially the real party in interest. A.H. Robins Co., 788 F.2d at 999; see also McCartney v. Integra National Bank North, 106 F.3d 506, 510 (3d Cir. 1997).

While there is no Fourth Circuit case addressing the same fact pattern presented in this case, courts in the Fourth Circuit and other jurisdictions have declined to apply the stay afforded by Section 362(a)(1) or Section 362(a)(6) to actions against guarantors or to the property of guarantors.

In Credit Alliance Corp. v. Williams, the company bought a loader from a seller. Credit Alliance, 851 F.2d 119, 120. Williams, an individual, guaranteed the company's payment to the seller. Id. The seller then assigned the contract to Credit Alliance. Id. When the company defaulted, Credit Alliance sued the company and the guarantor to collect the payment. Id. The

4

company then filed for bankruptcy. Id. The state court had entered a default judgment against Williams, the guarantor, who then sought to overturn the default judgment as a violation of the automatic stay. Id. The Fourth Circuit refused to overturn default judgment, citing Section 362 generally, stating that "[n]othing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt. Congress knew how to extend the automatic stay to non-bankrupt parties when it intended to do so." Id. at 121.

In Saratoga Group, Ltd. v. Peoples National Bank (In re Geris), 973 F.2d 318 (4th Cir. 1992), a corporation bought land from an individual named Geris, who was one of three shareholders of the corporation. Id. at 319. The corporation paid Geris for the land by borrowing money from a bank and executing a note and deed of trust in favor of the bank. Id. Geris also endorsed the note, making him a co-obligor on the debt. Id. Geris eventually filed for bankruptcy, and the corporation defaulted on the note. Id. The bank then foreclosed on the land, creating a deficiency, and Geris and the corporation argued to the bankruptcy court that this foreclosure violated the automatic stay. Id. They argued that even though Geris did not own the land, he had a right to redeem the debt as an obligor on the note, or, in the alternative, that he had an equitable interest in the land sufficient to warrant the protections of the automatic stay. Id. at 320-21. While the court recognized that Geris had a reason to want the land sold for as much as possible, which would reduce or eliminate any deficiency, the court rejected these arguments, stating that "if we were to accept this interest as sufficient to invoke in [the corporation's] favor the automatic stay provision of 11 U.S.C. § 362(a), we would be cutting off foreclosure rights of secured creditors in any property standing as security for a debt that happened to be guaranteed by a bankrupt. This cannot have been an intended function

5

of the automatic stay provision, any more than it was intended to prevent a secured creditor from collecting from or foreclosing on the property of a bankrupt debtor's guarantors or codebtors." Id. at 321 (citing Credit Alliance, 851 F.2d at 121; Otoe County, 754 F.2d at 882-83). The court further stated that "[t]he interest Geris has in seeing that the value of the property, when sold to satisfy the debt, is maximized, thereby limiting the exposure of the bankruptcy estate on the underlying debt, is far too attenuated to warrant extending the automatic stay protections of the Bankruptcy Code to prevent [the bank] from foreclosing on the [] property." Id. See also In re Moore, 410 B.R. 439, 441 (Bankr. E.D. Va. 2009) ("[T]he automatic stay does not stay collection actions against other parties who may be liable with the debtor nor does it stay actions against property that is not property of the bankruptcy estate."); Hudgins v. Life Savins Bank (In re Hudgins), 153 B.R. 441, 444 (Bankr. E.D. Va. 1993) ("In this case debtors are seeking to preserve potential equity in the property that may flow through the partnership and benefit their estates, as opposed to preventing a potential deficiency claim as in Geris. However, the principle remains the same. The automatic stay provision of 11 U.S.C. § 362(a) applies only to debtors in bankruptcy and then only to their property.")

Courts in other jurisdictions have analyzed subsections (a)(1) and (a)(6) and reached the same conclusion–that the automatic stay does not apply to actions against guarantors or property owned by guarantors.

In In re Advanced Ribbons and Office Products, Inc. v. U.S. Interstate Distributing, Inc., 125 B.R. 259 (B.A.P. 9th Cir. 1991), a corporation defaulted on its obligations as the buyer in a leveraged buyout transaction and filed for bankruptcy. Id. at 260. The seller company then caused a post-petition foreclosure sale of the debtor's stock that was owned by the debtor's sole

6

shareholder, Teuber, and pledged as security for the debtor's obligations in the buyout. Id. The debtor moved to void the foreclosure as violating the automatic stay under Section 362(a)(6). Id. The Bankruptcy Appellate Panel found that the protections of Section 362(a)(6) did not apply to the foreclosure because

> the sale did not involve a collection of a claim against the debtor. Rather, the sale involved the collection of a claim against the property of Teuber. In essence, the appellees had a claim against the debtor, the debtor's property, and Teuber's stock in the debtor. The foreclosure sale was an act to collect a claim against Teuber's property–his stock in the debtor–just as an action against a guarantor is an act to collect a claim against the guarantor.

Id. at 264. The court further explained that

> [t]he inapplicability of section 362 to stay acts against a non-debtor's property that is pledged to secure a debt of the debtor is further suggested by a consideration of 11 U.S.C. §§ 1201 and 1301. Sections 1201 and 1301 extend the automatic stay in Chapter 12 and 13 cases to stay any acts 'to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt . . . .' If the debtor was correct that the section 362(a)(6) stay prevented the foreclosure of third party property that is pledged to secure a debt of the debtor, the utilization of sections 1201 and 1301 to stay acts against an individual that secured a debt of the debtor would be unnecessary.

Id. at 265.

In In re Torrez, 132 B.R. 924 (Bankr. E.D. Ca. 1991), the debtors conveyed certain property subject to a mortgage to their children pre-petition. Id. at 927. The debtors defaulted on the loan obligations, and the debtors and their children eventually filed for bankruptcy. Id. at 928. The children then voluntarily dismissed their bankruptcies. Id. The lender foreclosed on the property post-petition, and filed a motion for a determination that the foreclosure did not violate the automatic stay. Id. The court, citing Advanced Ribbons, held that the provisions of Section 362(a) did not apply to the foreclosure, even where the debtors retained a possessory interest in the property. Id. at 941. The court found that the property foreclosed upon belonged to the children and was not

property of the estate. Id. In analyzing whether Section 362(a)(6) might apply to stay the foreclosure, the court reasoned that "[a] strict reading of 11 U.S.C. § 362(a)(6) indicates that it stays acts to recover a 'claim' against the debtor, and not a debt owed by the debtor." Id. at 943. The court explained that "11 U.S.C. § 101(4) defines 'claim' as a 'right to payment' or a 'right to an equitable remedy' for breach of performance if such performance gives rise to a right to payment," and that "11 U.S.C. § 101(11) defines 'debt' as liability on a claim." Id. Accordingly, the court found that the foreclosure action was not on a claim against the debtors. Id. at 944. Specifically, the court stated that there was nothing to indicate that "the legislature intended the scope of 11 U.S.C. § 362(a)(6) to preclude creditors from acting against claims or enforcing rights to payment against non-debtors. The only interpretation of 11 U.S.C. § 362(a)(6) warranted is that it precludes acts to collect, assess, or recover a claim against the debtor only." Id.

In In re Everchanged, Inc., 230 B.R. 891 (Bankr. S.D. Ga 1999), the debtor corporation conveyed certain real property to a third party pre-petition; however, the debtor remained liable on the mortgage on the property, and the debtor's president and sole shareholder continued to reside on the property. Id. at 892-893. When the debtor defaulted on its mortgage payments, the bank foreclosed on the property. Id. at 893. The debtor sought to set aside the foreclosure sale arguing that Section 362(a)(1) and/or Section 362(a)(6) applied to protect the debtor against the foreclosure. Id. The court, citing Geris, held that the debtor's interest in avoiding a deficiency was too attenuated to warrant application of the stay in this case. Id. at 894. The court further explained that Sections 362(a)(1) and 362(a)(6) prevent only in personam actions against the debtor and do not prohibit in rem foreclosures on non-estate property (in rem foreclosures on estate property would be barred by Section 362(a)(3), (4), and/or (5)). Id. Specifically, the court stated that "while an attempt to collect

8

a deficiency violates the stay, the act of foreclosing against property outside of the bankruptcy estate does not. If the creditor elects not to pursue a deficiency, or if none exists there will never be an in personam action against the Debtor and Section 362(a)(1) and (6) is not implicated." Id. at 895.

## CONCLUSION

The automatic stay does not apply to Fidelity's foreclosure on the Property. The Debtor does not list any interest in the Property on its schedules, and the parties agree that the Property is not property of the estate. The Debtor does not assert any ownership interest in the Property. The interests of the Debtor in avoiding a deficiency judgment and in using the Property in its proposed plan of reorganization are far too attenuated to be protected by the automatic stay. Fidelity foreclosed on property of non-debtors–it did not seek a deficiency against the Debtor or make any attempt to collect a claim against the Debtor, or to obtain property of the Debtor or property of the estate. The automatic stay does not enjoin Fidelity's foreclosure on the Property even though the foreclosure may have an effect on the Debtor's reorganization.[3] Therefore, there is no violation of the automatic stay, and sanctions are not appropriate. The Motion shall be denied.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

---

[3] Fidelity alleged, without contradiction, that prior to foreclosure sale, the McKenzies informed Fidelity that they were negotiating a sale of the Property, yet they never filed a motion seeking Court approval of such a sale. The actions of the McKenzies are, of course, inconsistent with the position that the foreclosure on the Property was stayed by the automatic stay. Since the McKenzies are the sole owners of the Property, and the Property is not property of the estate, the McKenzies could have sold the Property post-petition without the approval of the Court.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LOG, L.L.C., | ) | CASE NO. 10-80378 |
| | ) | |
| Debtor. | ) | Chapter 11 |

**PARTIES IN INTEREST**

Gregory B. Crampton, Esq.
Nicholls & Crampton, P.A.
3700 Glenwood Ave
Ste. 500
Raleigh, NC 27612

Craig S. Haskell, Esq.
Nodell, Glass & Haskell, LLP
5540 Centerview Drive
Suite 416
Raleigh, NC 27606

Michael D. West, Esq.
U.S. Bankruptcy Administrator
P.O. Box 1828
Greensboro, NC 27402